## James N. Buffum *vs.* Fayette Mutual Fire Insurance Company.

If the by-laws of a mutual insurance company provide that " each person, before the policy shall be binding on the company, shall pay to the treasurer or agent such premium and make such deposit as the directors shall determine," the company is not rendered liabl on a policy which is executed but not delivered, and for which no premium has been paid, by an oral promise of their treasurer to the applicant for insurance that, if anything should happen, he would see the premium paid, or that he would take it upon himself to keep the policies good.

Contract upon a policy of insurance, executed upon the application of Wilson & Allen, as owners of the premises insured, and payable to James N. Buffum, as mortgagee, in case of loss.

At the trial in the superior court, it appeared that the policy was never delivered, by reason of the non-payment of the premium, and, upon evidence which is stated in the opinion, *Ames*, J. ruled that the plaintiff was not entitled to recover, and a verdict was returned for the defendants, and the plaintiff alleged exceptions.

*J. W. Perry,* for the plaintiff.

*D. Saunders, Jr. & G. E. Hood,* for the defendants.

Chapman, J. The 14th by-law provides that " each person, before the policy shall be binding on the company, shall pay to the treasurer or agent such premium and make such deposit as the directors shall determine." It appears by the testimony of Allen, one of the owners of the property described in the policy, that he had been unable to raise the money to pay the premium, and had obtained the assent of the president and treasurer to repeated delays, extending from January to April. He then called on Chadwick, the treasurer, and said to him, " I have called to see about the policies, and want to extend the time to the first days of May, when I shall have funds." Chadwick answered, " I don't know what I can do." Allen said, " If I must I will go out and borrow the money. At any rate, I don't want the policies vitiated." Chadwick replied, " No, I will take the responsibility; and if anything happens, I will see the premium

paid." Allen thanked him. Chadwick said, " Now you understand that if anything happens, the responsibility stands on me, and you must take care of me." The fire occurred on the 2d of May, and Allen tendered the premium on the 2d of August. On cross-examination, Allen stated the matter somewhat differently. " Chadwick said he would take it upon himself to keep the policies good, if I would pay him in the first part of May.' The evidence should have been submitted to a jury, if, by any fair construction of this conversation, it could have been construed by them to amount to a payment.' But it cannot be thus construed. Nothing was actually received, nor did Chadwick make himself liable to the company, so that they could have charged the sureties on his bond for the amount of the premium. By the first statement of Allen, it was an agreement to see the money paid if anything happened. It was thus contingent whether he should pay it or not. If nothing happened, the policy was by the agreement to continue without payment of premium. By the other statement, the promise was upon a condition which Allen did not fulfil. By the construction which the plaintiff would give to the transaction, the company would be bound to insure the property, and trust to Allen to pay the premium when he could. This would be unjust towards his associates; and the by-law referred to was designed to guard against such risks.

There is yet another view of the transaction. It is quite obvious that Chadwick did not, as agent of the company, agree that he would use their funds to pay this premium. But it was in his private capacity that he agreed to advance money. And though he was treasurer, his private agreement would not bind the company. If he made a valid agreement in his private capacity, the remedy would be against him, if he violated it; and no claim against the company could arise out of it. As the statement of the conversation comes from Allen himself, we have knowledge that he understood the words as they are stated.

*Exceptions overruled.*